IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE REDEEMED CHRISTIAN CHURCH OF :
GOD (VICTORY TEMPLE) BOWIE,
MARYLAND                          :

    v.                            :  Civil Action No. DKC 19-3367

                                     :
PRINCE GEORGE'S COUNTY, MARYLAND
                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this religious exercise rights and zoning case is the motion to dismiss filed by Defendant Prince George's County, Maryland ("the County"). (ECF No. 12). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied.

**I. Background**

The Redeemed Christian Church of God (Victory Temple) Bowie, Maryland ("Victory Temple") "is a religious congregation associated with the Redeemed Christian Church of God ("RCCG")[.]"[1] (ECF No. 1, ¶ 6). "Victory Temple was founded in 1996 and moved to its present location at 13701 Old Annapolis Road, Bowie, MD (the "Old Annapolis Road site") in 2002." (*Id.*, ¶ 7). Victory Temple's membership has grown from approximately 500 members in

---

[1] Unless otherwise noted, the following facts are undisputed and construed in the light most favorable to Victory Temple.

1996 to over 2,000 members today. The Old Annapolis Road site "is too small to accommodate Victory Temple's growing congregation." (*Id.*, ¶ 11). "In February 2018, Victory Temple purchased four parcels of land located at 14403 Mount Oak Road, Bowie, MD," (the "Mount Oak Road site"). (*Id.,* ¶ 18). Victory Temple hopes to build a new church facility at the Mount Oak Road site to house adequately its growing congregation.

The development process for the Mount Oak Road site has at least two initial steps. First, Victory Temple must seek to amend the County's 2008 Water and Sewer Plan to upgrade the Mount Oak Road site from "Category 5 (Future Community System) to Category 4 (Community System Adequate for Development Planning)." (ECF No. 1, ¶ 23). Second, Victory Temple must submit "a preliminary plan of subdivision to the Maryland-National Capital Park and Planning Commission ("M-NCPPC"), [the County's] Planning Board." (*Id.*, ¶ 26). The M-NCPPC "may not approve a preliminary plan unless the property has adequate public facilities, including public sewer and water." (*Id.*). Victory Temple focuses on the first step.

"The Mount Oak Road site is zoned R-E (Residential Estate), a zone in which a church is an expressly permitted use." (ECF No. 1, ¶ 19). "The Mount Oak Road site is within [the County's] Sewer Envelope, which is the area within which public water and sewer facilities may be approved." (*Id.*, ¶ 20). "Victory Temple submitted an application to the County's Department of Permitting,

2

Inspections and Enforcement to amend the County's 2008 Water and Sewer Plan[.]"[2] (*Id.*, ¶ 22). The "requested amendment would upgrade the Mount Oak Road site's water and sewer category" and "[t]he proposed upgrade would allow public water and sewer service [to be supplied eventually] to the Mount Oak Road site." (*Id.*, ¶ 22-23). In contrast, Category 5 properties have one water and sewer option – a well and septic system. (*Id.*, ¶ 25).

The City Manager for the City of Bowie, the County Executive, and the M-NCPPC each recommended that the Mount Oak Road site advance to Category 4. (ECF No. 1, ¶¶ 27–30). Following two public hearings, in which community members "expressed opposition to Victory Temple's plan to build a church at the Mount Oak Road site[,]" the County Council voted to deny Victory Temple's requested amendment. (*Id.*, ¶¶ 31–34). Consequently, Victory Temple cannot proceed to the preliminary planning stage. (*Id.*, ¶ 35).

---

[2] In reviewing a motion to dismiss, the court may consider allegations in the complaint, matters of public record, and documents attached to the complaint that are integral to the complaint and authentic. *See* Fed.R.Civ.P. 10(c); *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Victory Temple attaches to its complaint its application for an amendment to the 2008 Water and Sewer Plan, (ECF No. 1-8), and the 2008 Water and Sewer Plan, (ECF No. 1-9), along with other documents relating to its plans for the Mount Oak Road site. The County does not contest the authenticity of these documents and references some of them in its motion to dismiss. (ECF No. 12-1, at 2-3). Thus, the court may consider these documents without converting the motion into one for summary judgment.

3

On November 22, 2019, Victory Temple filed a complaint against the County and asserted one claim: violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). (ECF No. 1). On December 16, 2019, the County filed the presently pending motion to dismiss. (ECF No. 12). On January 3, 2020, Victory Temple responded.[3] (ECF No. 16). On January 22, 2020, the County replied. (ECF No. 18).

## II. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit

---

[3] Victory Temple filed a motion for preliminary injunctive relief contemporaneously with its filing of the complaint. (ECF No. 2). The County opposed the motion for preliminary injunctive relief, (ECF No. 13), and Victory Temple consolidated its response to the motion to dismiss with its reply in support of the motion for preliminary injunctive relief, (ECF No. 18). This opinion addresses only the motion to dismiss.

4

the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

RLUIPA protects land use as religious exercise and states:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution[:] (A) is in furtherance of a compelling government interest; and (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). The above provision "applies in any case in which the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes. . . individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2). If a plaintiff produces prima facie evidence to support a RLUIPA violation, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the

5

law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C. § 2000cc-2(b). RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by [its terms] and the Constitution[.]" 42 U.S.C. § 2000cc-3.

### A. Land Use Regulation

The County first contends that Victory Temple fails to state a claim because RLUIPA "applies exclusively to land use regulations, and amendments to county water and sewer plans are not land use regulations as a matter of Maryland law." (ECF No. 12-1, at 2). Victory Temple emphasizes the statutory text, "decisions of federal courts that have interpreted RLUIPA's provisions broadly[,]" and legislative history to contend that the denial of its amendment constitutes a land use regulation. (ECF No. 16, at 10–19). Victory Temple also questions the County's reliance on Maryland, rather than federal, law. (*Id.*, at 14–15).

RLUIPA defines "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership,

leasehold, easement, servitude, or other property interest in the regulated land[.]" 42 U.S.C. § 2000cc-5.

The County relies on *Appleton Reg'l Cmty. All. v. Cty. Comm'rs of Cecil Cty.*, 404 Md. 92, 98 (2008), to argue that the amendment is not a zoning law, and therefore is not a land use regulation. *Appleton* involved a challenge by a group of residents opposed to an amendment to Cecil County's water and sewer plan, and to a development project generally. *Id.*, at 96-97. The residents filed a petition for judicial review "challenging the Board's approval of the [developer's] proposed amendment" and the trial court granted the motions to dismiss filed by both the Board and the developer. *Id.*, at 97. The Court of Appeals of Maryland affirmed the dismissal, holding that "the proposed amendment. . . is not a 'zoning action'" and concluding that judicial review was therefore inappropriate. *Id.*, at 98.

Fortunately, the court does not need to delve too deeply into the vagaries of Maryland land use law. Not only is it inappropriate to defer to state law for the definition of a term in a federal statute, but it is also not entirely clear that state law makes the distinction the County advances.

RLUIPA refers, first to "land use regulation" and then, as part of the definition, includes "a zoning law." Although it is obvious that state law is involved in the analysis, definition of the term "zoning" is a matter of federal law:

7

> Our analysis is guided by the general principle "that federal law governs the application of Congressional statutes in the absence of plain language to the contrary." *Yanez-Popp v. INS*, 998 F.2d 231, 236 (4th Cir. 1993); *see NLRB v. Natural Gas Util. Dist.*, 402 U.S. 600, 603, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971) ("[I]n the absence of a plain indication to the contrary. . . it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law.") (internal quotation marks omitted). Since section 922(g) does not direct us to apply Virginia law in determining whether a defendant has been "committed" under the statute, the question remains one of federal law. *See, e.g. United States v. Chamberlain*, 159 F.3d 656, 658 (1st Cir. 1998); *United States v. Waters*, 23 F.3d 29, 31 (2d Cir. 1994).

*United States v. Midgett*, 198 F.3d 143, 145 (4th Cir. 1999).

Furthermore,

> It first bears noting that the precise definition of "zoning" is difficult to delineate. *Fortress Bible Church v. Feiner*, 694 F.3d 208, 216 (2d Cir. 2012). In general terms, zoning refers to the "legislative division of a region, esp[ecially] a municipality, into separate districts with different regulations within the districts for land use, building size, and the like." *Zoning*, Black's Law Dictionary (10th ed. 2014); *cf.* Ala. Code § 11-52-70 (authorizing municipal corporations within Alabama to divide territory for different uses).

*Martin v. Houston*, 196 F. Supp. 3d 1258, 1264 (M.D. Ala. 2016).

The Supreme Court of the United States also recognizes that the meaning of a term cannot be divorced from its context. *See, e.g.,*

*Yates v. United States*, 574 U.S. 528, 135 S.Ct. 1074, 1081-82 (2015).

The sole issue in *Appleton* was whether the proposed water and sewer amendment was a "zoning action" within the meaning of a Maryland statute outlining the availability of judicial review. 404 Md. at 98. The judicial review statute provides: "Any of the following persons may file a request for judicial review of a decision of a board of appeals or a zoning action of a legislative body by the circuit court of the county: (1) a person aggrieved by the decision or action; (2) a taxpayer; or (3) an officer or unit of the local jurisdiction." Md. Code Ann., Land Use ("LU") § 4-401.[4]

This judicial review statute does not apply to the County. *See Bazzarre v. Cty. Council of Prince George's Cty.*, 2017 WL 2334472, at *21 (Md.Ct.Spec.App. May 30, 2017) ("LU § 4-401, however, does not apply to Prince George's County; rather, the applicable statute is LU § 22-407."). Moreover, *Appleton* merely held that the proposed amendment was a "planning action" rather than a "zoning action" and that, therefore, judicial review was unavailable. 404 Md. at 99. *Appleton* does not suggest that

---

[4] *Appleton* identifies the statute as Maryland Code, Article 66B § 4.08(a). 404 Md. at 98. Maryland repealed Article 66B § 4.08(a) and reenacted it as Land Use § 4-401. Md. Code Ann., Land Use § 4-401 ("This section is new language derived without substantive change from former Art. 66B, § 4.08(a).").

9

planning actions are not also a form of zoning and subsequent cases suggest just that.

*Bethel World Outreach Church v. Montgomery Cty.* ("*Bethel I*"), 184 Md.App. 572 (2009), is particularly instructive. *Bethel I* explains that "[n]either a planning action nor a comprehensive zoning action is appealable under [LU § 4-401] as a 'zoning action.'" 184 Md.App. at 591 (quoting *Gregory v. Bd. of Cty. Comm'rs of Frederick Cty.*, 89 Md.App. 635, 640–41 (1991)). This suggests that what constitutes a "zoning action" for judicial review is narrower than zoning. *Bethel I* also discusses *Appleton*, noting that *Appleton* "distinguished between comprehensive zoning and planning actions on one hand, and piecemeal zoning actions on the other[.]" *Id.* *Bethel I* states that *Appleton* "concluded that the water and sewer plan amendment at issue fell into the former category" – that is, into comprehensive zoning and planning actions. *Id.* at 592. More explicitly, *Bethel I* concludes that *Appleton* "likened the [water and sewer plan amendment process] to comprehensive zoning."[5] *Id.* Finally, *Bethel I* "assum[ed] arguendo

---

[5] The court will not address the distinction between legislative and quasi-judicial action and its import to the availability of judicial review. The court notes, however, that amendments to water and sewer plans may be legislative or quasi-judicial. *Bethel I*, 184 Md. App. at 246 ("We are not holding that all actions. . . amending the water and sewer plan. . . are necessarily legislative."); *Dugan v. Prince George's Cty.*, 216 Md. App. 650, 661 (2014) (noting that "it is permissible to identify situations where amending the water and sewer plan is a quasi-judicial action").

that RLUIPA applies to the. . . decision to deny a water and sewer plan amendment[,]" which additionally supports the conclusion that the availability of judicial review does not control the question of whether an action constitutes a land use regulation. *Id.* at 604.

Both parties discuss *Bethel World Outreach Ministries v. Montgomery Cty. Council* ("*Bethel II*"), 706 F.3d 548 (4th Cir. 2013) and *Reaching Hearts Int'l, Inc. v. Prince George's Cty.*, 584 F.Supp.2d 766 (D.Md. 2008). (ECF No. 12-1, at 7-8; ECF No. 16, at 16-17). These cases involve denials of water and sewer category changes and support the conclusion that the County's denial of Victory Temple's proposed amendment is within RLUIPA's scope as a land use regulation. The County attempts to distinguish these cases by arguing that they involve enactments of zoning legislation, in addition to denials of water and sewer category changes. (ECF No. 12-1, at 7-8). This distinction is unpersuasive. In *Reaching Hearts*, these two actions related to two separate parcels of land and the court nonetheless analyzed whether each action imposed a substantial burden on the plaintiff. 584 F.Supp.2d at 784–787 ("The jury heard testimony that the Defendant's denials of [the plaintiff's] water and sewer category change applications. . . prevented [the plaintiff] from building its church or church school anywhere on the rear portion of its property. . . and that the enactment of [legislation] foreclosed

11

[the plaintiff's] ability to build on the front 7-acre parcel[.]"). In *Bethel II*, Montgomery County simultaneously denied the plaintiff's requested amendment and "approved an amendment to the water and sewer plan prohibiting public water and sewer service to private institutional facilities[.]" 706 F.3d at 553. The United States Court of Appeals for the Fourth Circuit did not treat the County's two actions separately in its substantial burden analysis and, as Victory Temple notes, "did not hold or imply that the county's initial denial could not have been redressed under RLUIPA." (ECF No. 16, at 16).

The term "land use regulation" or "zoning action" is used in RLUIPA along with the concept that the government is making an "individualized assessment of the proposed use" for the property that "limits or restricts a claimant's use or development of land." In context, the County's denial of the water and sewer amendment constitutes a land use regulation under RLUIPA.

### B. Substantial Burden

The County next contends that Victory Temple fails to allege the imposition of a substantial burden. (ECF No. 12-1, at 8–13). "A substantial burden exists where a regulation 'puts substantial pressure on [the plaintiff] to modify its behavior.'" *Jesus Christ*

*Is the Answer Ministries, Inc. v. Baltimore Cty.* ("*JCAM*"), 915 F.3d 256, 260 (4th Cir. 2019) (citing *Bethel II*, 706 F.3d at 556).

The County argues that Victory Temple "does not allege any religious ten[et] or practice that its congregants are unable to perform or that they are forced to modify." (ECF No. 12-1, at 9). The complaint does contain such allegations. For example, Victory Temple alleges that, as an evangelical denomination, "it must work quickly to recruit as many followers of Christ as possible[,]" (ECF No. 1, ¶ 9), and that it "cannot proceed to build a church. . . that will serve to meet its religious mission[,]" (*id.*, ¶ 41). Moreover, Victory Temple alleges that the Old Annapolis Road site "is too small to accommodate [its] growing congregation." (*Id.*, ¶ 11). The Old Annapolis Road site's limitations prevent the congregation from worshiping as one community on the first Sunday of every month and on religious holidays, cause crowding and discomfort on regular Sunday services (and prevent teenagers from worshiping alongside their parents), create parking inconveniences, cause crowding and chaos in Sunday school classes, and prevent facilitation of fellowship and community service. (*Id.*, ¶¶ 11-17). Moreover, Victory Temple incurs additional costs associated with hiring traffic control and renting additional space. (*Id.*, 14-15).

The County argues that "a land use regulation must do more than make it expensive, inconvenient[,] or difficult to practice

13

a religion[]" to impose a substantial burden.  (ECF No. 12-1, at 8).  The County contends that overcrowding is insufficient to support a substantial burden claim and cites *Bethel I*.  (*Id.*, at 9).  *Bethel I* does state that "bald assertions" that "existing facilities are overcrowded [are] simply not enough to support [a] substantial burden claim[.]"  184 Md. App. at 607.  Notably, however, *Bethel I* contrasts the lack of evidence in that case with evidence in *Reaching Hearts* that the denial prohibited entirely the church from building on its property, caused the church to suffer financial loss, and prevented the church from adhering to its religious precepts.  *Id.* at 606–607.  Victory Temple does not make bald assertions of overcrowding.  Instead, Victory Temple alleges that overcrowding is one of many issues it faces after the County's denial of its proposed amendment.  Victory Temple alleges facts that are closer to *Reaching Hearts* than *Bethel I*.  Moreover, as Victory Temple catalogues in its opposition, federal courts "have found overcrowding or insufficient space to constitute a substantial burden under RLUIPA."  (ECF No. 16, at 20–23).

The County also contends that Victory Temple "lacked reasonable grounds" to believe it could use the property to build a church and "assumed the risk that it would be unable to use public water and sewer."  (ECF No. 12-1, at 11).  The Fourth Circuit recently explained that "land use regulations can substantially burden religious exercise where an organization

14

acquires property expecting to use it for a religious purpose but is prevented from doing so by the application of a zoning ordinance." *JCAM*, 915 F.3d at 260-61. The County cites two cases, *Andon, LLC v. City of Newport News*, 813 F.3d 510 (4th Cir. 2016) and *Bethel I*, to support its argument. Both are distinguishable. *Andon* involved a variance request. 813 F.3d at 512-513. *Bethel I* involved a property outside the water and sewer envelope, and the policy that allowed category change amendments was under review. 184 Md.App. at 580-81. In contrast, Victory Temple purchased a property within the water and sewer envelope and within a zone (R-E) for which a church is an expressly permitted use. (ECF No. 1, ¶ 19). Victory Temple sufficiently alleges that the County's denial of its water and sewer change application imposed a substantial burden.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendant Prince George's County, Maryland, (ECF No. 12), will be denied. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
