IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE REDEEMED CHRISTIAN CHURCH OF:
GOD (VICTORY TEMPLE) BOWIE,
MARYLAND                          :

    v.                            :   Civil Action No. DKC 19-3367

                           :

PRINCE GEORGE'S COUNTY, MARYLAND
                           :

**MEMORANDUM OPINION**

The Redeemed Christian Church of God (Victory Temple) Bowie, Maryland ("Plaintiff" or "Victory Temple") filed this lawsuit against Prince George's County, Maryland ("Defendant" or "the County") alleging that the County's denial of Victory Temple's application for an amendment to the Prince George's County Water and Sewer Plan violated the substantial burden provision of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). (ECF No. 1). Victory Temple sought a preliminary injunction but, following a denial of the County's motion to dismiss (ECF No. 20), the parties agreed to expedited discovery and a bench trial. The County moved to amend its answer (ECF No. 34), and then filed a supplemental modifying the request (ECF No. 35). Victory Temple had consented to the motion as modified, and it will be granted. The parties submitted trial briefs (ECF Nos. 46; 47), and the three-day bench trial occurred over Zoomgov.com

from June 23 to June 25, 2020.  The court now issues findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## I.   Background

Victory Temple is a religious congregation of the Redeemed Christian Church of God ("RCCG").  The RCCG is an evangelical church and was founded in Nigeria in 1952.  There are 40,000 RCCG parishes globally, including 700 RCCG parishes within the United States.  The RCCG's main goal is to win souls and it aims to accomplish that goal by "plant[ing] churches within five minutes walking distance in every city and town of developing countries and within [ten] minutes driving distance in every city and town of developed countries."  Pl.'s Trial Ex. 1, at 2.

Pastor Adebayo Adeyokunnu ("Pastor Bayo") is Victory Temple's pastor.  Pastor Bayo founded Victory Temple in August 1996 in Laurel, Maryland.  In 2000, Victory Temple purchased property located at 13701 Old Annapolis Road (the "Old Annapolis Road property") in Bowie, Maryland.  The Old Annapolis Road property formerly functioned as a furniture store and Victory Temple renovated and repurposed it.  In 2002, Victory Temple began using the Old Annapolis Road property as a church.  Thus, as of 2002, there were two Victory Temple parishes in Maryland: one in Laurel, Maryland and one in Bowie, Maryland.

Since opening at the Old Annapolis Road property, Victory Temple's membership has grown from 500 members in 2002 to over

2,000 members currently.[1]  The Old Annapolis Road property has an occupancy limit of 521 total seats.  Pl.'s Trial Ex. 51.  In 2012, Victory Temple began leasing a neighboring property, 13633 Old Annapolis Road in Bowie, Maryland.  Pl.'s Trial Ex. 5.  Victory Temple uses the leased property as a place of worship for its teenaged members.  Additionally, Victory Temple occasionally rents 13711 Old Annapolis Road and uses it as an extension for additional capacity.  Pl.'s Trial Ex. 9.  Thus, in addition to the Old Annapolis Road property, Victory Temple utilizes at least two additional properties to accommodate its growing congregation.[2]

Victory Temple began searching for land to purchase for building a new church approximately seven years ago.  Victory Temple also started a building fund and parishioners began contributing to it.  The space limitations of the Old Annapolis Road property prompted the search.  Victory Temple's services were too crowded and the parking lot at the Old Annapolis Road property was insufficient.  Pastor Bayo testified that when the parking lot is full, parishioners park on Old Annapolis Road and Victory Temple employs off-duty police officers to help manage their cars.  The

---

[1] In the trial brief and during trial, the County emphasized that Victory Temple's attendance records do not reflect 2,000 members "because the entire membership does not [attend] church every Sunday."  (ECF No. 46, at 8).

[2] Pastor Bayo also testified at trial that Victory Temple occasionally rents Bowie High School for its annual "Power Explosion" event.

Old Annapolis Road property does not have a fellowship hall where the Victory Temple congregation may gather as one community. Pastor Bayo explained that parishioners currently meet in the lobby and the parking lot after services.

Victory Temple created a building committee to search for new land and employed a realtor. The first property that Victory Temple considered was Outlots A, B, and C in the Mount Oak Estates Subdivision (the "Westbrook property"). The Westbrook property is in Bowie, a requirement for the property to be considered for purchase. Victory Temple hired an engineering firm, Ben Dyer Associates, Inc. ("BDA"), to analyze the Westbrook property. In February 2016, BDA prepared a feasibility study and presented its findings to Victory Temple.[3] Based on BDA's feasibility study, Victory Temple decided against purchasing the Westbrook property.

Victory Temple continued its search. The next property Victory Temple considered was 14403 Mount Oak Road (the "Mount Oak Road property"). The Mount Oak Road property is also in Bowie, near the intersection of Church Road and Mount Oak Road. In April 2017, Victory Temple again engaged BDA to perform a feasibility study. Pl.'s Trial Ex. 18. Pastor Bayo understood that the feasibility study would analyze Victory Temple's ability to build

---

[3] The parties contest the admissibility of BDA's feasibility study for the Westbrook Property. Consulting the study's contents is unnecessary and it will not be admitted.

a church on the property.  Pastor Bayo also understood that BDA would analyze the property for water and sewer service.

On August 22, 2017, BDA presented its feasibility study for the Mount Oak Road property to Victory Temple.  Pl.'s Trial Ex. 19.  The feasibility study noted that the Mount Oak Road property "is currently zoned R-E[]" and that "[a] church is a use by right in this zone and development of this use is permitted pursuant to the preparation of a Preliminary Plan of Subdivision and a Detailed Site Plan." *Id.*, at 1.  The feasibility study also explained that the Mount Oak Road property "is in water and sewer category 5, an area planned for a future community water and sewer system." *Id.*, at 3.  BDA concluded that "the proposed church is feasible." *Id.*, at 4.  Based on the feasibility study, Pastor Bayo testified he was "fully convinced" building a church on the Mount Oak Road property was possible.  Victory Temple purchased the Mount Oak Road property in February 2018.

The crux of this action is the County's denial of Victory Temple's application to amend its water and sewer category from Category 5 – Future Community Service to Category 4 – Community System Adequate for Development Planning.

## A.   Process

Two plans are particularly relevant to this case: the Plan Prince George's County 2035 Approved General Plan ("Plan 2035")

and the Prince George's County Water and Sewer Plan (the "Water and Sewer Plan").

### 1.   Plan 2035

Plan 2035 is a 20-year general plan and "blueprint for long-term growth and development in Prince George's County." Stip. Ex. 4, at 5.  Plan 2035 "take[s] a comprehensive view of [the County's] opportunities and challenges[]" and "uses that information to create a bold new vision, countywide land use plan, and implementation framework." *Id.* at 8.  "Plan 2035 does not take a property-level view of the County or change land use designations or zoning on individual properties." *Id.*

Two maps "establish the framework for achieving the Plan 2035 vision – the Growth Policy Map and the Strategic Investment Map." Stip. Ex. 4, at 14.  "The Growth Policy Map reflects the Plan 2035 vision and visually communicates where and how Prince George's County should grow over the next 20 years[.]" *Id.*  "The Strategic Investment Map identifies where [Prince George's County] should invest the majority of county, state, and federal resources in the near- and mid-term in order to create meaningful long-term change and increase [its] commercial tax base." *Id.*

The Growth Policy Map introduces six new area classifications:  (1) employment areas;  (2) established communities; (3) future water and sewer service areas; (4) local centers;  (5) regional transit districts;  and (6) rural and

agricultural areas.  Stip. Ex. 4, at 18.  It also demarcates "the growth boundary."  *Id.*  "The growth boundary is important because it designates the areas that are eligible to receive public water and [sewer] service and impacts where [Prince George's County] grow[s] and develop[s]."  *Id.*  The Mount Oak Road property is within the growth boundary and classified as a future water and sewer service area.  Plan 2035 describes the future water and sewer service area classification as follows:

> Development is largely determined by the availability and capacity of water and sewer service (see Growth Boundary on Page 18).  Controlling the expansion of water and sewer service is the easiest and most effective way a jurisdiction can manage and phase growth.  Plan 2035 recommends placing properties that are located within the Growth Boundary, but which have not been approved for a water and sewer category change (which would allow for denser development) in Future Water and Sewer Service Areas.  The Future Water and Sewer Service Areas are holding zones in which near-term development is deferred until additional residential capacity is required.

*Id.* at 20.

The Strategic Investment Map helps Prince George's County "determine where and how to focus [its] Capital Improvement Program" and targets public sector funding and incentives to four areas: (1) downtowns; (2) the innovation corridor; (3) neighborhood revitalization; and (4) priority preservation areas. Stip. Ex. 4, at 21; *see also* Stip. Ex. 5, at 2-22.  The Mount Oak Property is not within an area identified for strategic investment by the Strategic Investment Map.

**2.   The Water and Sewer Plan**

The Water and Sewer Plan implements Plan 2035.  Stip. Ex. 5, at 1-1.  The Water and Sewer Plan "implements the land use and development policies set by the County[]" and "guides the County planning and development processes by setting out the criteria under which both public and private water and sewer services can be provided."  *Id.*

Chapter 2 of the Water and Sewer Plan "outlines the policies and procedures for water and sewer planning, including the water and sewer categories, category change policies, and their connection to the County's development review process."  Stip. Ex. 5, at 1-1.  The Water and Sewer Plan demarcates the Sewer Envelope. *Id.*, at 2-2.  The Sewer Envelope is "a boundary beyond which no community water and sewer facilities will be approved[]" and it "serves to encourage growth in communities where water and sewer services are approved and are sufficient for handling this growth." *Id.*  The Mount Oak Road property is within the Sewer Envelope. There are six state category designations for water and sewer service areas; the County modified the state designations and uses four categories.  *Id.*, at 2-4.  This litigation involves Categories 5 and 4 (a property progresses from one category to the next in reverse-numerical order).  The Water and Sewer Plan describes Category 5:

**Future Community Service**.   This category consists of
land inside the Sewer Envelope that should not be
developed until water and sewer lines are available to
serve the proposed development.   Properties in Category
5 require a redesignation to Category 4 prior to the
development review process. . . . Redesignation from
Category 5 to Category 4 must proceed through a
legislative amendment to the Water and Sewer Plan[.]

*Id.*, at 2-4, 2-5.   The Water and Sewer Plan describes Category 4:

**Community System Adequate for Development Planning**.
This category includes all properties inside the Sewer
Envelope for which the subdivision process is required.
Redesignation from Category 4 to Category 3 may be
requested through the Administrative Amendment process.
In addition to the preliminary subdivision requirements,
the redesignation will require that (1) the development
proposal is consistent with the County's development
policies and criteria (Section 2.1.4) and the State
Growth Act; (2) adequate capacity exists; and (3) the
projects for necessary system improvements are included
in the approved WSSC Capital Improvement Program (CIP).
Any inconsistencies or inadequacies with the above
criteria must be eliminated prior to redesignation to
Category 3.

*Id.*, at 2-5.  Chapter 6 of the Water and Sewer Plan details "[t]he

procedures and requirements to amend the Water and Sewer Plan and

to amend water and sewer service categories[.]"

*Id.*, at 1-1.  "Requests for changes to these categories, also known

as the Water and Sewer Plan Amendments, can be achieved through

two processes: [t]he [l]egislative [a]mendment process and the

[a]dministrative [a]mendment process."  *Id.*, at 6-2.  The

legislative amendment process applies when, as here, "changes are

proposed from Category 6 or 5 to Category 4."  *Id.*

The legislative amendment process involves the Prince George's County Council (the "County Council"), the Prince George's County Department of Permitting, Inspections and Enforcement ("DPIE" and formerly, the Department of Environmental Resources), the County Executive, and the Maryland-National Capital Park and Planning Commission ("M-NCPPC"). Stip. Ex. 5, at 6-2, 6-3. Although each entity offers input, the authority to amend the Water and Sewer Plan "resides with the County Council, following recommendations by the County Executive." *Id.*, at 6-1. Section 6.3 of the Water and Sewer Plan outlines the legislative amendment process:

> The County Executive has delegated the management of the Water and Sewer Plan, including the preparation of Legislative Amendments, to [DPIE]. [DPIE] is at the forefront in implementing the County's goals, objectives and legal requirements for providing water and sewer service in Prince George's County . . . through the Department's protection of the County's natural and manmade resources. In its management of the Water and Sewer Plan and amendments, [DPIE] evaluates, prepares and submits proposed Legislative Amendments for the County Executive's review and recommendation.[4] These recommendations are then sent with an accompanying proposed Council Resolution for consideration by the County Council.

> The County Council provides a notice of the pending amendments to the public and County and State agencies prior to a public hearing. Anyone interested in an amendment or an application in the proposed Water and Sewer Plan amendment package may testify at the public

---

[4] DPIE refers applications for amendments to various agencies for review, incorporates comments received from the reviewing agencies, and prepares a report evaluating the applications (the "Staff Report"). Stip. Ex. 5, at 6-3.

hearing.   After the public hearing, a work session of
the appropriate County Council Committee is held.  After
considering matters raised at the public hearing and
work session, the County Council acts on the proposed
Legislative Amendments.   The County Executive has ten
days following adoption of the resolution to comment on
the County Council's action before the resolution is
effective.

Stip. Ex. 5, at 6-2, 6-3.  A separate process, the administrative

amendment process, applies "when changes are proposed from

Category 4 to Category 3."   *Id.*, at 6-2.   There are three

legislative amendment cycles annually, except during election

years.  *Id.*, at 6-3.  This action involves the December 2018 cycle

of amendments.[5]

### B.   Victory Temple's Category Change Request

After purchasing the Mount Oak Road property in February 2018,

Victory Temple met with the M-NCPPC staff in May 2018 to discuss

the proposed development and to obtain early impressions and

feedback.   Victory Temple presented BDA's feasibility study and

the M-NCPPC staff provided comments for consideration, including:

(4) "[a] Water & Sewer category change will be required from S-5

---

[5] The parties agree that, without amendment to S-4 and W-4,
Victory Temple could not move to the next phase of the process,
*i.e.*, to submit a preliminary plan of subdivision.  That phase is
subject to complex laws and regulations and involves multiple
parties, including the Planning Board, a subset of the M-NCPPC.
Decisions of the Planning Board are subject to judicial review.
*See*, e.g., *Garner v. Archers Glen Partners, Inc.*, 405 Md. 43
(2008).  The M-NCPPC website's development review information page
provides a flowchart that illustrates some of the process,
available at: http://www.pgplanning.org/DocumentCenter/View/1326
/Subdivision---Preliminary-Plans-PDF?bidId=.

& W-5 to S-3 & W-3 (the S-4 & W-4 is the intermediate step)" and (8) "Transportation section does not believe there are any significant traffic concerns because the intersection was recently improved[] i.e. review of other intersection in the surround[ing] area will have to be checked however, to ensure this[.]"  Pl.'s Trial Ex. 39.

Victory Temple submitted its application for a water and sewer amendment and the County received the application on November 27, 2018.  DPIE circulated the application for review and comment. Initially, the City Manager for the City of Bowie, the County Executive, DPIE, and the M-NCPPC determined that Victory Temple's application met the Water and Sewer Plan criteria and recommended approval.

The City Manager for the City of Bowie, Alfred D. Lott, in a memorandum dated January 31, 2019, concluded that the Mount Oak Road property "meets the criteria for advancement to Category W-4/S-4.  The abutting subdivision to the east (Woodmore Estates), the subdivision and church across Mount Oak Road, as well as many other parcels along the east side of Church Road, are already in Category W-3/S-3."  Pl.'s Trial Ex. 23.   Mr. Lott recommended that Victory Temple's application be approved.  The City of Bowie City Council (the "City Council") held two hearings.  The first occurred on February 4, 2019, but the City Council "tabled action" "[t]o hear from the Homeowners Associations in the area[.]"  Stip.

12

Ex. 3.  At the second hearing, on February 19, 2019, "[s]ixteen individuals addressed the . . . amendment request during the Citizen Participation portion[.]" *Id.* Following the individuals' testimony, the City Council "unanimously voted to recommend denial[.]"[6] *Id.*

The County Council, on March 12, 2019, introduced the resolution and referred the resolution to the Transportation Infrastructure, Energy and Environment Committee ("TIEE Committee").  On April 11, 2019, DPIE transmitted its staff report to the County Council, including the recommendations of DPIE, the County Executive, and the M-NCPPC that the Mount Oak Road property "advance to Water and Sewer Category 4 – Community System Adequate for Development Planning."  Stip. Ex. 3.  On April 16, 2019, the County Council held a public hearing regarding the December 2018 cycle of amendments.  Victory Temple's application garnered significant interest.  Twenty residents testified at the hearing to oppose Victory Temple's application, including trial witnesses James Albert, Carrie Bridges, and Jnatel Sims.

---

[6] The Mayor of the City of Bowie subsequently wrote a letter, dated March 15, 2019, to the County Council confirming the City Council's newfound opposition and summarizing the reasons advanced by the citizens as: "(1) the County's planning policies are not met; (2) it is not clear how the proposal protects environmental quality and public infrastructure (including existing water and sewer service and Church Road); and, (3) property values may decline."  Stip. Ex. 3.  The letter also explained that there is a CIP project for Church Road, which runs adjacent to the Mount Oak Road property, "but the project is not currently funded." *Id.*

The TIEE Committee met on April 23, 2019 to discuss the
December 2018 cycle of amendments.  Ms. Shirley Anthony-Branch
explained DPIE's recommended approval:

> [W]hen Staff looks at applications, we look at them in
> totality in regards to the entire County, not specific
> to any district.  When we reviewed the [RCCG], they met
> all the criteria that is adopted in the Water and Sewer
> Plan.  And when they meet that criteria, unless there
> are some extenuating circumstances, our recommendation
> would always be to allow it to go to Category 4.  And
> Category 4 is when the planning agency would be able to
> review this more succinctly, more in depth.  And at that
> time, I believe that the community also gets involved.
> So, again, we saw no other extenuating circumstances
> other than when we arrived at the public hearing to know
> that there was some opposition by the homeowners in the
> area.  If you look at your Staff Report, at the time the
> comments were requested from the City of Bowie, they
> withheld them, and they indicated that they did not want
> to make comment until after they held a public hearing.
> And the letter that you all received was received after
> the recommendation went forward to the County Executive.
> And again, based on the information that DPIE reviewed,
> our recommendation remains that the application met the
> criteria of the Water and Sewer Plan, and that's all we
> look at.  That's not our position to make any other
> judgment call.  We go by the Plan, and we uphold the
> Plan.

Stip. Ex. 3.  Ms. Anthony-Branch also testified at trial, to the
same effect.  Ms. Tiffany Williams-Jennings also spoke during the
April 23, 2019 TIEE Committee meeting and explained the M-NCPPC's
recommended approval:

> The Planning Board, of course we met on April 11th, and
> Staff comments do note that the subject property is
> within the R-E Zone.  A – the construction of a church
> on 28 acres is permitted in the R-E Zone.  It is
> important to note that the subject property is adjacent
> to the [Mulliken's Delight] and cemetery, which is a
> designated Historic Site, a designated Prince George's

14

> County Historic Site.  So, at the time the church goes
> through preliminary plan of subdivision, they will have
> to submit a Phase I archaeology survey as well as be
> reviewed by the Historic Preservation Commission.  Also,
> at the time of the preliminary plan of subdivision, they
> will have to submit a Transportation Study to look at
> the impact the church will have on transportation
> adequacy.

Stip. Ex. 3.  Ms. Williams-Jennings did not testify at trial.  The

TIEE Committee then voted to deny Victory Temple's application and

to retain the current water and sewer category for the Mount Oak

Road property "until more of the concerns are addressed."  Stip.

Ex. 2.  Council Chair Todd Turner summarized the TIEE Committee's

decision:

> There was substantial testimony [at the April 16,
> 2019 public hearing] that an application for a 60,000-
> square-foot building with seating capacity for [1,200]
> to 2,000 persons with an estimated 750 parking spaces,
> particularly in an area where we have a history of
> speeding and accidents along Mt. Oak and Church Roads,
> and that is in the record, would also unduly burden the
> community.  In addition, [Victory Temple], in both its
> application and testimony before the County Council has
> not provided any evidence nor demonstrated hardship in
> meeting these policies and criteria under the Water and
> Sewer Plan.  In addition, maintaining the current
> category of the property would not create an undue burden
> on or preclude the church in developing its property in
> the future consistent with the community character.
>
> Finally, obviously the City of Bowie, which borders
> this property and owns a major community park just south
> of this property and Church Road Park, conducted its own
> review and public hearing on this application.  In
> addition, the City Staff testified and provided written
> correspondence requesting a denial of this category
> change, which the [TIEE Committee] can take due notice
> of obviously by reference.  So, where does that leave
> us?  I believe there still needs to be work done amongst
> all the stakeholders involved in this process, whether

it's the church, the surrounding communities, the City
of Bowie and the County.

Stip. Ex. 3.  On May 7, 2019, the County Council received a new
draft of the resolution, substituted the second draft for the first
draft, and adopted the resolution denying Victory Temple's
application.  Stip. Ex. 2.

## II.  RLUIPA

The substantial burden provision of RLUIPA states:

No government shall impose or implement a land use
regulation in a manner that imposes a substantial burden
on the religious exercise of a person, including a
religious assembly or institution, unless the government
demonstrates that imposition of the burden on that
person, assembly, or institution (A) is in furtherance
of a compelling governmental interest; and (B) is the
least restrictive means of furthering that compelling
governmental interest.

42 U.S.C. § 2000cc(a)(1).  The above provision "applies in any
case in which the substantial burden is imposed in the
implementation of a land use regulation or system of land use
regulations, under which a government makes . . . individualized
assessments of the proposed uses for the property involved."
§ 2000cc(a)(2).  If a plaintiff produces prima facie evidence to
support a RLUIPA violation, "the government shall bear the burden
of persuasion on any element of the claim, except that the
plaintiff shall bear the burden of persuasion on whether the law
(including a regulation) or government practice that is challenged
by the claim substantially burdens the plaintiff's exercise of
religion." § 2000cc-2(b).  RLUIPA "shall be construed in favor of

16

a broad protection of religious exercise, to the maximum extent permitted by [its terms] and the Constitution[.]" § 2000cc-3(g).

## III. Analysis

### A.   Land Use Regulation

"The term 'land use regulation' means a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land[.]" 42 U.S.C. § 2000cc-5(5). The court previously, when resolving the County's motion to dismiss, concluded that "the County's denial of the water and sewer amendment constitutes a land use regulation under RLUIPA." (ECF No. 20, at 12). The County, in its trial brief and during trial, challenges that conclusion and again argues that legislative amendments to the Water and Sewer Plan do not constitute zoning laws, and therefore cannot be land use regulations subject to RLUIPA. (ECF No. 46, at 28-30).

The County again relies on *Appleton Regional Community Alliance v. County Commissioners of Cecil County*, 404 Md. 92 (2008), to argue "that a proposed amendment to a county's water and sewer plan is not a zoning action[.]" (*Id.*, at 28). The court need not reiterate the reasons the County's argument fails particularly because the County fails to engage with the earlier analysis. (ECF No. 20, at 7-12). The County also reasserts its contention that state law, not federal law, controls the definition

of the term "zoning."[7]   (ECF No. 46, at 29-30).   The County acknowledges "the general rule that terms in federal statutes are defined with reference to federal law" but argues that the general rule is inapplicable because "[z]oning equally is a quintessential matter of local concern." (*Id.*, at 29).   To support this argument, the County cites two unpublished United States Court of Appeals for the Fourth Circuit cases involving federal abstention. (*Id.*, at 29-30 (discussing *I-77 Props., LLC v. Fairfield Cty.*, 288 F.App'x 108 (4ᵗʰ Cir. 2008) and *Fourth Quarter Props. IV, Inc. v. City of Concord*, 127 F.App'x 648 (4ᵗʰ Cir. 2005))).   They are unpersuasive.   The County cites no case applying state law to define "land use regulation," "zoning law," or any other RLUIPA terms.

The County also characterizes the Water and Sewer Plan as "a comprehensive planning document" and emphasizes the applicable amendment process is legislative. (ECF No. 46, at 21-28).   While the Water and Sewer Plan may be a comprehensive planning document, there is no question that water and sewer category change requests occur parcel by parcel.   The Water and Sewer Plan, by outlining the Sewer Envelope, defines the area "beyond which no community water and sewer facilities will be approved[]" and "encourage[s]

---

[7]   The County focuses on defining the term "zoning law" ignoring that "RLUIPA refers, first to 'land use regulation' and then, as part of the definition, includes 'a zoning law.'" (ECF No. 20, at 7).

growth in communities where water and sewer services are approved[.]" Stip Ex. 5, at 2-2. Within the Sewer Envelope, however, "[t]he process of changing [water and sewer] categories allows public water and sewer service to be staged according to development proposals, and assures high quality development by the landowner[.]" *Id.* The Water and Sewer Plan therefore permits the County to make "individualized assessments of the proposed uses for the property involved." § 2000cc(a)(2).

The County's distinction between the administrative and legislative amendment processes is similarly unavailing. According to the Water and Sewer Plan, the administrative process applies "when changes are proposed from Category 4 to Category 3[]" and the legislative process applies "when changes are proposed from Category 6 or 5 to Category 4." Stip. Ex. 5, at 6-2. Notably, two other property owners, Cresthill Baptist Church and Trinity Lutheran Church, applied for an amendment during the December 2018 cycle of amendments. Stip. Ex. 3. These two property owners each requested (and received) a category change from Category 5 to Category 3. Stip. Ex. 2. This reality suggests some fluidity between the administrative and legislative amendment processes and undercuts the County's assertion that the administrative amendment process "is in stark contrast to" the legislative amendment process. (ECF No. 46, at 27).

B.   **Substantial Burden**

The Fourth Circuit recently outlined the substantial burden

analysis:

> RLUIPA prohibits land use regulations that impose a "substantial burden" on religious practice, unless they are the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc(a)(1).  A substantial burden exists where a regulation "puts substantial pressure on [the plaintiff] to modify its behavior." *Bethel World Outreach Ministries v. Montgomery Cty. Council* [("*Bethel II*")], 706 F.3d 548, 556 (4th Cir. 2013).

> As relevant here, land use regulations can substantially burden religious exercise where an organization acquires property expecting to use it for a religious purpose but is prevented from doing so by the application of a zoning ordinance.  In such a case, two questions are usually relevant to determining whether RLUIPA has been violated.

> First, is the impediment to the organization's religious practice substantial?  The answer will usually be "yes" where use of the property would serve an unmet religious need, the restriction on religious use is absolute rather than conditional, and the organization must acquire a different property as a result.  *See Bethel* [*II*], 706 F.3d at 557-58.

> Second, who is responsible for the impediment – the government, or the religious organization?  In answering this question, we have considered whether the organization had a "reasonable expectation" of religious land use, *see Bethel* [*II*], 706 F.3d at 558, and whether the burden faced by the organization is "self-imposed," *see Andon, LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016).

*Jesus Christ is the Answer Ministries, Inc. v. Balt. Cty.* ("*JCAM*"),

915 F.3d 256, 260-61 (4th Cir. 2019).

This is not a close call.  The County's denial of Victory Temple's application for an amendment imposes a substantial burden on Victory Temple's religious practice.

Victory Temple acquired the Mount Oak Road property expecting to build a church.  The County's denial of Victory Temple's application for a water and sewer category change substantially burdens Victory Temple because Victory Temple cannot proceed with its development plans while the property remains in Category 5. The two *JCAM* questions are thus relevant.

First, the denial of Victory Temple's category change request has prevented it entirely from developing its proposed church on the Mount Oak Road property.  The Old Annapolis Road property is insufficient to meet Victory Temple's needs.  Another case involving the County, *Reaching Hearts Int'l, Inc. v. Prince George's Cty.*, 584 F.Supp.2d 766 (D.Md. 2008), *aff'd* 368 F.App'x 370 (4th Cir. 2010), is useful for the first question of the *JCAM* substantial burden analysis.

Pastor Bayo testified that Victory Temple's attendance regularly exceeds the Old Annapolis Road property's 521-person capacity.  Exceeding the capacity "has become a norm" and occurs "almost every Sunday."  Pastor Bayo testified that Victory Temple turns people away after reaching capacity, frustrating the church's fundamental evangelical beliefs.  *See Reaching Hearts Int'l*, 584 F.Supp.2d at 786-87 ("[The leased property] is not large

21

enough to accommodate [the church's] congregation (thereby stifling [the church's] religious mission to grow its congregation)[.]"). Overcrowding is a significant problem generally but especially on the first Sunday of each month when Victory Temple holds one "thanksgiving" service for all its parishioners. The County argues that the monthly thanksgiving service is not an edict or precept of the RCCG faith. This argument is unpersuasive given RLUIPA's explicit guidance that "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7). Lieutenant Owen Edoohonba, a Victory Temple parishioner, also testified about the Old Annapolis Road property's significant limitations.

Second, Victory Temple had a reasonable expectation of religious land use. The Mount Oak Road property is zoned R-E and a church is a use by right. The County's reliance on *Andon, LLC v. City of Newport News*, 813 F.3d 510 (4th Cir. 2016) and *Friends of Lubavitch v. Balt. Cty.*, 421 F.Supp.3d 146 (D.Md. 2019) is inapt. (ECF No. 46, at 38-42). *Andon* involved a variance request. 813 F.3d at 515. *Friends of Lubavitch* involved a special exception. 421 F.Supp.3d at 164-65.

Victory Temple also reasonably expected that its category change request would be approved, although it is far from clear that the "reasonable expectation" focuses on each step in the land

use process.  *JCAM,* 915 F.3d at 261-62.  Victory Temple hired BDA to assist its property search.  Before purchasing the Mount Oak Road property, Victory Temple rejected another property on BDA's recommendation.  BDA's feasibility study concluded "the proposed church is feasible."  Pl.'s Trial Ex. 19, at 4.  Pastor Bayo testified that the BDA feasibility study "fully convinced" him that building a church on the Mount Oak Road property was possible. The County emphasizes, in its trial brief and on cross-examination, the word "possible."  (ECF No. 46, at 10 ("Plaintiff admits that it understood that the change was only 'possible.'")).  The County places too much weight on Pastor Bayo's diction.  The Merriam-Webster Online Dictionary provides three definitions of "possible."  "Possible," *Merriam-Webster.com* (Merriam-Webster 2020), http://www.merriam-webster.com/dictionary/possible.  They are:

> (1) (a):  being within the limits of ability,
>            capacity, or realization
>            // a *possible* but difficult task

> (1) (b):  being what may be conceived, be done, or
>            occur according to nature, custom, or
>            manners
>            // the best *possible* care
>            // the worst *possible* circumstance

> (2) (a):  being something that may or may not occur
>            // a *possible* surprise visit

> (2) (b):  being something that may or may not be
>            true or actual
>            // *possible* explanation

23

                 (3):        having an indicated potential
                             // a *possible* housing site

*Id.*  Synonyms include "achievable, attainable, doable, *feasible*,
practicable, realizable, viable, [and] workable."  *Id.* (emphasis
added).[8]  "Although the ordinary meaning of a word normally aligns
with its dictionary definition, *see Blakely v. Wards*, 738 F.3d
607, 611 (4th Cir. 2013) (en banc), this general rule offers less
guidance when applied to a word [with many dictionary
definitions]."  *Navy Fed. Credit Union v. LTD Fin. Servs. LP*, ---
F.3d ----, 2020 WL 5014866, at *6-7 (4th Cir. Aug. 20, 2020).  "The
Supreme Court [of the United States] labels words of this nature
'chameleons' – that is, the color of their surroundings determines
their character."  *Id.* at *7 (collecting cases).  Given the context
surrounding Victory Temple's property search, the third definition
is applicable.  Moreover, as Victory Temple emphasized, there is
no evidence that the County has ever lawfully previously denied a
category change request, from Category 5 to Category 4, when the
requesting property owner generally fit the Water and Sewer Plan
criteria for an amendment.  Victory Temple had a reasonable
expectation that it could use the Mount Oak Road property to build
a church.  The County's denial of Victory Temple's category change

---

        [8] Searching Merriam-Webster's Dictionary of Law yields the
same definitions and synonyms.  Black's Law Dictionary does not
define possible.

request imposed a substantial burden on Victory Temple's religious exercise.

### C.   Strict Scrutiny

A land use regulation "violates RLUIPA by imposing a substantial burden on religious exercise *only* if the regulation fails to satisfy strict scrutiny." *Bethel II*, 706 F.3d at 558 (citing 42 U.S.C. § 2000cc(a)(1)).  The County must therefore demonstrate that its denial of Victory Temple's application for an amendment to the Water and Sewer Plan "is the least restrictive means of furthering [a] compelling governmental interest."  42 U.S.C. § 2000cc(a)(1).  It fails to do so.

In its pretrial brief, the County set forth its understanding of the law regarding compelling interests and least restrictive alternative:

> Compelling interests are those that implicate "the government's paramount interest in protecting physical or mental health, public safety, or public welfare." *American Life League, Inc. v. Reno*, 47 F.3d 642, 655 (4th Cir. 1995) (citing *Sherbert v. Verner*, 347 U.S. 398, 403 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205, 230 (1972)).  "Traffic safety qualifies as a compelling government interest." *Gbalazeh v. City of Dallas, Tx.*, 2019 WL 1569345, *2 (N.D. Tx. 2019).  *See also Roman Catholic Archdiocese of Kansas City in Kansas v. City of Mission Woods*, 337 F.Supp.3d 1122, 1139 (D. Kan. 2018) (citing *Murphy v. Zoning Comm'n of Town of New Milford*, 148 F.Supp.2d 173, 190 (D. Conn. 2001) ("There appears to be no dispute that local governments have a compelling interest in protecting the health and safety of their communities through the enforcement of the local zoning regulations.") (citations omitted)). . . .

The government's conduct must be narrowly tailored to serve its compelling interest, which means that "no less restrictive alternative" would serve the government's purpose. *Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496, *12 (D. Md. 2020) (citation and internal quotation marks omitted). To meet this burden, the government does not need to refute all conceivable alternatives, short of the decision it made. *Hamilton [v. Schriro*, 74 F.3d 1545, 1556 (8th Cir. 1996)]. "Justice Blackmun recognized the dilemma in a least restrictive means analysis: 'A judge would be unimaginative indeed if he [or she] could not come up with something a little less "drastic" or a little less "restrictive" in almost any situation, and thereby enable himself [or herself] to vote to strike legislation down.'" *Id*. (citation omitted).

Furthermore, the plaintiff also bears a burden in this prong of the analysis. *Hamilton*, 74 F.3d at 1556. The plaintiff "must demonstrate what, if any, less restrictive means remain unexplored." *Id*. (holding that the plaintiff "failed to enlighten us as to any viable less restrictive means that may remain viable to the prison officials short of prohibiting the sweat lodge ceremony entirely"). If the plaintiff posits less restrictive alternatives, the plaintiff must also show "that the proposed less restrictive means would be equally effective in serving [the] State's compelling interests." *Antietam Battlefield KOA*, 2020 WL 2556496 at *13 (citations omitted) (concluding that the plaintiff failed to show that allowing religious services and gatherings to continue subject to social distancing precautions would be equally as effective in serving the government's compelling interest in slowing the spread of COVID-19).

(ECF No. 46, at 42-44).

The County identifies "traffic safety" as its compelling governmental interest. Victory Temple argues that traffic safety is a pretext and that the County Council acted in response to its constituents' religious animus expressed during the public hearings. Even if traffic safety constitutes a compelling

interest, and it likely does, the County wholly fails to link its compelling interest to the denial of Victory Temple's application for an amendment.[9]   "A 'compelling interest' is not a general interest but must be particular to a specific case; namely, the interest requires the infringement of a particular right in this case due to an interest of the highest order."   *Reaching Hearts Int'l*, 584 F.Supp.2d at 788.

The area surrounding the Mount Oak Road property does have traffic issues.   Church Road and Mount Oak Road are adjacent to the Mount Oak Road property.   There is a $9.5 million CIP for Church Road, but the project is not currently funded.   This CIP project "has been in the program since 2006." Stip. Ex. 3.   Joseph Meinert, the City of Bowie Planning Director, when discussing the CIP project at the April 16, 2019 public hearing testified that "the sad part is that the funding has been placed in the beyond six years category, which means there is no funding available for road improvements[.]"   *Id.*   The County has therefore been aware of

---

[9] Victory Temple objected to the County's introduction of evidence that was not considered by the County Council. (ECF No. 47, at 31-34).   The County may admit any evidence that was available to the County Council when it rendered its decision.   To the extent the County relies on evidence of traffic accidents post-dating the County Council's decision, the County undermines its position.   The ongoing traffic safety issues underscore first, that Victory Temple did not cause the traffic issues on Church Road and Mount Oak Road and second, that denying the category change request has not ameliorated them.

necessary road improvements for ten years prior to Victory Temple's category change request.

Mr. Albert, Ms. Bridges, and Ms. Sims all testified at trial and provided anecdotal evidence that similarly demonstrates the need for improvements to Church Road and Mount Oak Road. Mr. Albert testified that he and his wife have been the first responders to numerous car crashes on Church Road that required emergency transportation. Ms. Sims testified that vehicles routinely veer off Mount Oak Road and strike her fence necessitating repairs. Ms. Bridges testified regarding the heavy traffic on the weekend, when she travels on Church Road to coordinate sports events for the Bowie Boys and Girls Club.

The County argues that approving Victory Temple's category change request will make the existing traffic issues even worse. But Victory Temple did not cause the current traffic issues and there is no reliable evidence that the activities of the church would exacerbate those issues. More importantly, the County's denial of Victory Temple's application is not the least restrictive means of ameliorating them. The County fails to link its compelling governmental interest to its action. The County did not provide any traffic studies to support its contention that approving Victory Temple's category change request would exacerbate the existing traffic issues (or that denying Victory Temple's request would ameliorate them) and relies only on

anecdotes from neighboring property owners. *Reaching Hearts Int'l*, 584 F.Supp.2d at 789 ("As a threshold matter, it is difficult for [the County] to argue that its actions were the least restrictive means to achieve its compelling interests because [the County] did not commission, examine, or adduce any evidence at trial in the form of data, studies, or reports indicating what (if any) [the church's] water and sewer category change applications or subdivision proposal would have . . . This absence of qualitative and quantitative evidence on [the County's] part undermines any assertion that it fully and adequately considered any alternatives to its outright denials[.]"). Indeed, Chairman Turner's statement that "there still needs to be work done amongst all the stakeholders involved in this process" is telling. Stip. Ex. 3. The development review process contemplates the dialogue Chair Turner suggests, but Victory Temple cannot participate in the development review process until the County approves its category change request and designates the Mount Oak Road property Category 4.[10]

---

[10] The County's suggestion in its trial brief (ECF No. 46, at 43) that the "County Council" would not be able to weigh in on the traffic issues at the next stage of the process because it plays no part in reviewing the Planning Board misses the obvious. The defendant here is the County, not the Council. The Planning Board consists of the members of the M-NCPPC from Prince George's County. *See Cty. Council of Prince George's Cty. v. Zimmer Dev. Co.*, 444 Md. 490, 522, 528 (2015); Md.Code Ann., Land Use § 15-102 ("Subject to the approval of the County Executive, the County Council shall appoint each commissioner from Prince George's County."); *id.* §

**IV.   Conclusion**

For the foregoing reasons, the court finds that the County violated RLUIPA in denying Victory Temple's application for a category change from W5 and S5 to W4 and S4.   A conference call will be scheduled to discuss the proper relief.   A separate order will follow.

_____
/s/
DEBORAH K. CHASANOW
United States District Judge

---

20-201 ("The commissioners from each county are designated as the Montgomery County Planning Board or the Prince George's County Planning Board, respectively").