IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THE REDEEMED CHRISTIAN CHURCH OF :
GOD (VICTORY TEMPLE) BOWIE,
MARYLAND                          :

  v.                              :   Civil Action No. DKC 19-3367

                                  :
PRINCE GEORGE'S COUNTY, MARYLAND
                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this RLUIPA case is a motion pursuant to Fed.R.Civ.P. 62 to stay judgment or suspend injunction pending appeal. (ECF No. 70). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied.

**I.   Background**

The previous opinion in this matter provides a more in-depth background to the litigation, and explains in relevant part that

> [Plaintiff] Victory Temple is a religious congregation of the Redeemed Christian Church of God ("RCCG"). The RCCG is an evangelical church and was founded in Nigeria in 1952. There are 40,000 RCCG parishes globally, including 700 RCCG parishes within the United States. The RCCG's main goal is to win souls and it aims to accomplish that goal by "plant[ing] churches within five minutes walking distance in every city and town of developing countries and within [ten] minutes driving distance in every city and town of developed countries."

(ECF No. 58, at 2); *Redeemed Christian Church of God (Victory Temple) Bowie, Md. v. Prince George's Cty., Md.*, 485 F.Supp.3d 594, 595 (D.Md. 2020).  Committed to finding land to purchase to build a newer and larger church for its growing congregation, Victory Temple ultimately purchased 14403 Mount Oak Road (the "Mount Oak Road property") after due diligence and a feasibility study that found that Victory Temple's intended plans to develop the site were feasible; the current zoning allowed for a church use by right and it was currently in a "water and sewer category 5, an area planned for a future community water and sewer system." *Id.* at 596-97.

Victory Temple submitted its plans to the County, along with the feasibility study, and noted that its plan to build the church would require its designation to be changed from Category 5 to Category 3, with Category 4 as an "intermediate step."  Despite an initial recommendation by County planning officials for approval on this request, the County Council in 2019 referred the issue to the Transportation Infrastructure Energy and Environment Committee ("TIEE Committee").  After several residents testified at the hearing in opposition to the project, the TIEE Committee voted to deny approval, despite testimony from a Department of Permitting, Inspections and Enforcement ("DPIE") staff member that approval to Category 4 was usually done automatically "unless there are some

extenuating circumstances."[1]  After a revised version of TIEE's resolution was received by the County Council, it voted to adopt it and denied Victory Temple's application on May 7, 2019.  *Id.* at 600-02.

Victory Temple subsequently filed a complaint against the County on November 22, 2019, alleging that the denial of its application to amend Prince George's County Water and Sewer Plan violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") (ECF No. 1).  After a three-day bench trial, a memorandum opinion and order was issued finding that the County had indeed violated RLUIPA by denying Plaintiff's application to change its "W5 and S5" categories to a "W4 and S4."  *Victory Temple*, 485 F.Supp. at 608.  Ultimately, after the parties filed a consent motion with agreed upon language for a permanent injunction (ECF No. 61), on October 2, 2020, an order was issued that found money damages to be an inadequate remedy and that permanently enjoined the County from denying Victory Temple's application to amend the Water and Sewer Plan.  The County was ordered to advance the Mount Oak Road Property to a "Water and Sewer Category 4" within sixty days.  (ECF No. 62).

---

[1] As the DPIE employee had explained, "Category 4 is when the planning agency would be able to review this more succinctly, more in depth."  *Id.* at 601.

On October 16, the County filed a notice of appeal to the Fourth Circuit. (ECF No. 64). On December 3, it filed the motion to stay judgment or suspend injunction pending the appeal in question.[2] The motion argues that, in the absence of a stay of the permanent injunction, the appellate court may look on the issue as moot. Defendant argues it is thereby "attempting to avoid possible prejudice to its arguments on appeal should it be forced to redesignate the property." It argues that because the permanent injunction is of the "affirmative" type, as opposed to the normal "negative" type that simply *prevents* certain conduct, such a stay is warranted. Alternatively, it argues the "irreparable harm" that Plaintiff would face if it could not "advance the property's designation" is not "imminent or immediate," because the "ability to advance the subject property's water and sewer category designation will be preserved pending the outcome of the appeal." (ECF No. 70). Defendant cites *no* authority in support of its motion, however.[3]

---

[2] Plaintiff points out that "the practical distinction between those requests is not clear." They will be treated as one and the same. Plaintiff also suggests that Defendant is in contempt of court given that the motion to stay was filed more than sixty days after the permanent injunction order was issued. (ECF No. 71, at 2-3). Sixty days after October 2, 2020 was December 1, so the motion is only two days late and will be considered on the merits.

[3] Defendant also reports that Plaintiff sought relief from the Circuit Court for Prince George's County that was purportedly dismissed for failure to state a claim. (*Id.*, at 2) (citing

4

**II. Standard of Review**

Rule 62 (d) provides:

> While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify and injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

The Supreme Court laid out the relevant four factors in *Nken v. Holder*, 556 U.S. 418, 434 (2009), to consider when deciding whether to grant a stay:

> "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton* [*v. Braunskill*, 481 U.S. 770, 776 (1987)]. There is substantial overlap between these and the factors governing preliminary injunctions, see *Winter v.* [*Nat. Res. Def.*] *Council, Inc.,* 555 U.S. 7, 24 (2008); not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined.

(string citations removed).  "'[T]he most critical' factors, according to the Supreme Court, *Nken,* 556 U.S. at 434,[] are the

---

*Redeemed Christian Church of God (Victory Temple) v. Prince George's Cty Council*, No. 19-18641, Cir. Ct., Prince George's Cty. (Alves, J.) (May 4, 2020)).  It says Plaintiff has a pending appeal from this decision but fails to explain how this affects the adjudication of the present motion.

5

first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm — the latter referring to 'harm that cannot be prevented or fully rectified' by a successful appeal[.]" *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3ᵈ Cir 2015) (quoting *Roland Mach. Co. v. Dresser Indus.*, 749 F.2d 380, 386 (7ᵗʰ Cir. 1984)).

The burden is on the party requesting the stay, *Casa de Md., Inc. v. Trump*, PWG-19-2715, 2019 WL 7565389, at *2 (D.Md. Nov. 14, 2019). It is not yet entirely clear, however, just how the court is to evaluate those four factors:

> Some district courts in the Fourth Circuit have held that a party seeking a stay must satisfy each of the factors listed above, while others permit a sliding scale in which a stronger showing for some factors can make up for a weaker showing for others. Still other district courts have applied the standard for preliminary injunctions . . .

*Id.* at *2 n.2. In this case, as in that one, the outcome is not dependent on which of these approaches is applied, and so no definitive statement on the issue is necessary.

**III. Analysis**

All four factors weigh against granting a stay.

First, Defendant has not shown a strong likelihood of success on appeal. Defendant devotes a single sentence to this factor, despite its importance to the fate of its motion: "Defendant respectfully suggests that it will likely succeed on the merits of

6

its appeal particularly with respected to whether [RLUIPA] applies to Plaintiff's application for a legislative amendment to the Plan." (ECF No. 70, ¶ 7). Although it is vaguely stated, this appears to be a re-assertion of a defense previously raised by Defendant — that RLUIPA exclusively governs "land use regulation" and that county water and sewer plans do not qualify as such. As Plaintiff points out, however, this theory has *twice* been rejected: on a motion to dismiss and again at trial. *Redeemed Christian Church of God (Victory Temple) Bowie, Md. v. Prince George's Cty., Md.*, No. DKC 19-3367, 2020 WL 585298, at *3 (D.Md. Feb. 6, 2020); *Victory Temple*, 485 F.Supp.3d at 602-03.

Second, and of equal importance, the County has failed to demonstrate it will suffer *any* irreparable injury if its motion for a stay is denied, whereas Plaintiff has shown it will be substantially injured if the stay is approved.

Plaintiff is correct that, "The County's mootness concerns are misguided." As it points out, "If the County ultimately prevails on appeal and a final, non-reviewable judgment is entered in the County's favor, then RLUIPA will no longer place any constraint on the County's administration of the Water and Sewer Plan" as it relates to the property in question. The question is not rendered moot, Plaintiff argues, until its interest in "upgraded water and sewer classification" vests. This does not occur under Maryland law, Plaintiff contends, as long as there is

7

pending litigation on the matter. (ECF No. 71, at 8) (*citing Powell v. Calvert Cty.*, 368 Md. 400, 409 (2002) ("Until all necessary approvals, including all final court approvals, are obtained, nothing can vest or even begin to vest.").

Plaintiff has been granted the right to have the property reclassified to Category 4 under the Water and Sewer Plan. It concedes, however, that if it proceeds with planning the development of this site, it does so "at its own risk." Defendant will have *at least* one opportunity to challenge the permanent injunction at the Fourth Circuit, if not the Supreme Court. Should that court reverse the injunction, Plaintiff will be out whatever time and money it spent in moving ahead with its project.

Even putting aside that the approval sought far from guarantees Plaintiff the right to build its planned church, the party that stands to be "substantially injured" here is Plaintiff. "[S]tay of injunctive relief would preclude Victory Temple (for months or years, depending on the timing of the appeal process during the COVID-10 pandemic) from moving forward with its plans to build a new church." (ECF No. 71, at 9). It simply cannot proceed with planning *at all* until it is granted the designation and would instead be forced to sit idle on a property that it purchased with this singular goal in mind — an injury that was found to go beyond monetary injury in the previous order. (ECF No. 62, at 2). Defendant has failed to demonstrate the potential

8

for irreparable harm if its motion is denied, and whatever potential for harm does exist is far outweighed by the immediate and substantial injury to Plaintiff if the remedy it was awarded is not granted without delay.

Defendant does not discuss separately the final factor, namely how it would be in the public interest to grant the stay. When the Government is the party, these factors may merge. *Nken*, 556 U.S. at 436. Because it has failed to show irreparable harm to its interests, this factor weighs against granting a stay as well.

## IV. Conclusion

For the foregoing reasons, the motion to stay will be denied A separate order will follow.

/s/<br>
DEBORAH K. CHASANOW<br>
United States District Judge